UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
STEVEN ROJAS,                                                  :

                                                              :      07 Civ. 6687 (DAB) (GWG)

                                    Petitioner,
         -v.-                                                 :      REPORT AND
                                                                     RECOMMENDATION
R. WOODS,                                                     :

                                                              :
                                    Respondent.
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

         Steven Rojas, an inmate at Midstate Correctional Facility in Marcy, New York, brings

this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  After a jury trial in

Bronx County Supreme Court, Rojas was convicted of robbery and sentenced to a term of

imprisonment of three-and-a-half to seven years.  For the reasons stated below, Rojas's petition

should be denied.

I.       BACKGROUND

         A.       Incident and Arrest

         On December 8, 2002, Catherine Dominguez was robbed in a Bronx subway station,

when an assailant tore two gold chains from around her neck.  (Dominguez: Nov. 5 Tr. 313-15).[1]

Lillian Ruiz, a transit employee, witnessed the incident from her position inside the station token

booth.  (Ruiz: Oct. 29 Tr. 98-99).  Ruiz called the transit "command center" to report the

_____

         [1]  The trial transcripts have been bound into three volumes: Docket ## 11, 12, and 14.
We refer to each transcript by the date on the cover page, although some volumes comprise more
than one day's proceedings.

         A pre-suppression hearing was held on July 29, 2003.  The transcript of that hearing was
filed as Docket # 13.

robbery.  (Ruiz: Oct. 29 Tr. 104-05).  The command center then forwarded the message to the

police department.  (See Oct. 27 Tr. 402-03).  Ruiz testified that she had described the assailant

as light-skinned, with braces, baggy jeans, a disheveled afro, wearing no shirt, but with a T-shirt

around his neck.  (Ruiz: Oct. 29 Tr. 105).  The parties stipulated to the fact that Rojas wore

braces on the day of his arrest.  (Nov. 5 Tr. 306, 362).

When the police arrived on the scene, Ruiz told them that two men had entered the

station just before Dominguez, and that one of them had taken Dominguez's necklaces and fled.

(Ruiz: Oct. 29 Tr. 107-08).  Ruiz believed the other man, who had remained on the scene, was

the look-out.  (Ruiz: Oct. 29 Tr. 107-08).  The police arrested the remaining man, who was later

identified as Joshua Gordilas.  (Cooney: Oct. 29 Tr. 7, 10).  At the police station Dominguez told

the police that Gordilas was not the person who robbed her (Dominguez: Nov. 5 Tr. 317), and

Gordilas was released (Cooney: Oct. 29 Tr. 13).

The police then went to Rojas's home and asked him to come to the police station to

participate in a line-up, and Rojas agreed.  (Tuckett: Oct. 29 Tr. 184, 189-90).  Dominguez came

to the police station and picked Rojas out of a line-up.  (Dominguez: Nov. 5 Tr. 318).  Rojas was

then arrested.  Ruiz identified Rojas as the robber in court.  (Ruiz: Oct. 29 Tr. 105-06).

B.    Grand Jury Proceedings and Indictment

At the arraignment following his arrest, Rojas's attorney stated that Rojas intended to

testify before the grand jury.  See Brief for Defendant-Appellant in People v. Rojas (annexed as

Ex. 1 to Pimentel Affidavit in Opposition, filed Dec. 12, 2007 (Docket # 10) ("Pimentel Aff."))

(also annexed to Petition, filed July 25, 2007 (Docket # 1) ("Petition")) ("Def. Br."), at 3.

Rojas's case was first scheduled to go before a grand jury on December 16, 2002.  Id. at 4.  The

court officers, however, did not bring Rojas to the grand jury area until approximately 5:00 p.m., by which time some of the grand jurors had left and Rojas's case could not be heard.  Id.

On December 17, 2002, Rojas's attorney requested to be relieved as counsel.  Id.  New counsel was appointed, and the case was adjourned to January 3, 2003.  Id.  Rojas's counsel was unable to be present on January 3 due to the weather.  Id.  The grand jury heard Rojas's case that day and indicted Rojas without his testimony.  Id.

On January 15, 2003, Rojas's counsel was relieved again, and his arraignment on the indictment was adjourned until January 21, 2003.  Id. at 5.  New counsel filed a motion to dismiss pursuant to N.Y. Crim. Proc. L. §§ 190.50(5) and 210.35(4), on the basis that Rojas had not been allowed to testify before the grand jury.  Id.  Counsel dated the motion January 25, but the People asserted that it had not been received until January 28.  Id.  The court denied the motion, finding that the motion was not filed within five days of the arraignment, as required by N.Y. Crim. Proc. L. § 190.50(5)(c).  Id.

     C.     Description of Assailant Given by Ruiz

Rojas's trial counsel had requested from the prosecution copies of any recordings or "sprint" print-outs of the transit command center's call to the police department relaying Ruiz's report of the robbery.  (Oct. 27 Tr. 4-5).  The prosecutor stated that the recording of the call had been destroyed per transit command center procedures by the time he received Rojas's request, and no print-out was produced.  (Oct. 27 Tr. 5-6, 403).  Rojas's counsel moved to preclude Ruiz from testifying at the trial on the basis that the command center call to the police was required to be turned over to him under People v. Rosario, 9 N.Y.2d 286 (granting criminal defendant the right to examine a witness's prior statement), cert. denied, 368 U.S. 866 (1961).  (See Oct. 27 Tr.

313-14).  The court denied the motion on the ground that, because Ruiz did not call the police

herself, any recording or print-out of a transmission by the transit command center was not a

statement of a testifying witness.  (Oct. 29 Tr. 19-22, 25-26).  The court also refused to give an

adverse inference charge to the jury regarding the People's failure to produce a tape or print-out

of the command center's call to the police.  (Nov. 5 Tr. 381).

As previously noted, Ruiz had described the man who robbed Dominguez as light-

skinned with a disheveled afro hair style and braces on his teeth, wearing baggy jeans and a t-

shirt around his neck, but wearing no shirt.  (Ruiz: Oct. 29 Tr. 105).  She described the other man

who remained in the station as a light-skinned Black or Hispanic wearing a turban.  (Ruiz: Oct.

29 Tr. 105).  Ruiz also testified that the robber had punched Dominguez in the neck and back

several times (Ruiz: Oct. 29 Tr. 98), and knocked her down during the robbery (Ruiz: Oct. 29 Tr.

117-18).

Ruiz's testimony was contradicted by other witnesses on several of these points.

Dominguez testified that the robber was wearing a blue jacket (Dominguez: Nov. 5 Tr. 329,

343), and that she had not been punched or knocked down during the incident (Dominguez: Nov.

5 Tr. 339).  Also, Officer Michael Cooney, who responded to the emergency call, testified that

Ruiz had not told him that the robber had braces (nor, for that matter, had Dominguez).

(Cooney: Nov. 5 Tr. 370-71; Dominguez: Nov. 5 Tr. 344).

Neither a copy of Ruiz's call to the command center nor the message transmitted by the

command center to the police department became part of the record until Rojas obtained a copy

of the command center's message to the police after trial through a Freedom of Information Law

request in 2006, and included it as an exhibit to his motion pursuant to Crim. Proc. L. § 440.10.

See Emergency Booth Communication System Six Wire Report, dated Dec. 8, 2002 (annexed as

Ex. H to Notice of Motion Pursuant to CPL Sec. 440.10, dated Oct. 18, 2006 (reproduced as

Exhibit 5 to Pimentel Aff.)) (also appearing as Ex. H to Petition and as Ex. 8 to Pimentel Aff.)

("Six Wire Report").  Messages transmitted by the command center to the police, known as "Six

Wire Reports," are not verbatim copies of the call from the token booth clerk, but rather are "an

abbreviated and truncated version that is produced quickly so that the police can have a good

description of the perpetrator when they arrive at the scene."  Pimentel Aff. at 4; see also Ex. C

to Petition.  The message in this case stated that the robber was a black male, wearing a blue

jacket and black jeans.  See Six Wire Report.

     D.     Testimony Regarding Rojas Smoking "Crack"

The only other aspect of Rojas's trial that is relevant to this petition came during the

testimony of Officer Lyndon Tuckett, the police officer who first went to find Rojas at his home.

The prosecutor asked the officer to describe Rojas's appearance when Rojas opened the door.

(Tuckett: Oct. 29 Tr. 185).  The officer responded, "I mean he's just looking disheveled.  I mean

when we got there – during my conversation with him, he tell me that he had just finished

smoking crack or something like that."  (Tuckett: Oct. 29 Tr. 185).  Defense counsel objected to

this testimony and moved for a mistrial.  (Oct. 29 Tr. 185).  The court denied the motion but

struck the testimony and gave a limiting instruction to the jury in which they were told to

disregard the testimony completely.  (Oct. 29 Tr. 189).

Rojas's counsel, however, subsequently changed his position.  He advised the court that

he intended to cross-examine the officer about the statement regarding "smoking crack" and

requested that the court vacate its instruction to disregard the officer's testimony.  (Oct. 29 Tr.

235-36, 242-43).  The court did so.  (Oct. 29 Tr. 242-43).  Defense counsel then cross-examined

the officer on the statement, eliciting that the officer had not made any arrangements for hospital

care for Rojas, that he did not find any drugs or drug paraphernalia when he arrested Rojas, that

he had not previously mentioned this statement in prior proceedings or even to the district

attorney, and that he had checked "no" on a booking form that asked if Rojas used drugs.

(Tuckett: Oct. 29 Tr. 245-46, 249-50, 256).  The prosecutor referred to this statement in his

summation.  (Nov. 5 Tr. 441-42).

      E.    <u>Judgment and Post-Judgment Proceedings</u>

The jury convicted Rojas of third degree robbery, N.Y. Penal § 160.05, and on May 3,

2004, judgment was entered in Bronx County Supreme Court sentencing him to an indeterminate

prison term of three-and-a-half to seven years.  <u>See</u> Def. Br. at 1.  Rojas, represented by an

attorney, appealed his conviction asserting that (1) he was deprived of effective assistance of

counsel when his attorney filed an untimely motion to dismiss based on the fact that Rojas had

not been allowed to testify before the grand jury, as was his right; (2) his right to a fair trial was

violated by the testimony that he had been smoking crack; (3) the trial court failed to

appropriately sanction the prosecution for destruction of Ruiz's call to the command center; and

(4) the pre-trial photographic array and line-up were unduly suggestive.  <u>Id.</u> at ii-iii.  Rojas's

conviction was affirmed on May 18, 2006, <u>see</u> <u>People v. Rojas</u>, 29 A.D.3d 405 (1st Dep't 2006),

and his application for leave to appeal was denied by the Court of Appeals on July 24, 2006, <u>see</u>

7 N.Y.3d 794 (2006).

On October 18, 2006, Rojas, proceeding <u>pro se</u>, filed a § 440.10 motion to vacate his

conviction on the following grounds:

6

> I was denied due process of law, as guaranteed by the 14th and 15th
> Amendments . . . .  New evidence at issue is favorable to defendant, [and] the
> failure of the prosecution to obtain and disclose this evidence resulted in prejudice
> to defense, Brady. [sic]

Affidavit in Support of Motion to Vacate Under CPL Sec. 440.10, dated Oct. 18, 2006 (annexed

as Ex. 5 to Pimentel Aff.) ("440.10 Aff. "), ¶ 2.  The evidence referred to was the Six Wire

Report.  See id. ¶ 7.  Rojas also complained that the grand jury that indicted him was never made

aware that Gordilas, who testified before the grand jury, had also been arrested for the robbery.

Id.  Rojas's motion was denied, see Decision and Order in People v. Rojas, dated Feb. 5, 2007

(annexed as Ex. 9 to Pimentel Aff.) ("440.10 Dec."), and the Appellate Division denied Rojas

leave to appeal on May 10, 2007, see Certificate Denying Leave in People v. Rojas, dated May

10, 2007 (annexed as Ex. 11 to Pimentel Aff.).

Rojas's habeas corpus petition was received by the Pro Se Office of this Court on July 3,

2007.  See Petition.  He raises the following issues in his petition: (1) he was "deprived of the

right to testify in the Grand Jury, id. ¶ 13(1); (2) he received ineffective assistance of counsel

when his lawyer failed to file a timely motion to dismiss Rojas's indictment on the basis that he

had not been permitted to testify, id. ¶ 13(2); (3) his "Due Process right to a fair trial was

violated" by an officer's testimony that Rojas had stated to the officer that he "had just finished

smoking crack," id. ¶ 13(3); (4) he has "newly discovered evidence [and] [t]he court made

irreversible error when it denied my 440.10 motion on the grounds that due diligence was not

exercised," id. ¶ 13(4) (capitalization omitted); (5) his appellate counsel was "incompetent" for

failing to argue that the grand jury proceedings were "defective" because Gordilas testified

without the grand jury being informed that Gordilas "was arrested on the scene and charged with

committing this crime," id. ¶ 13(5); and (6) the State's failure to turnover "the 911 tape calls, or

sprint reports, and for the [Emergency Booth Communication System] transmission of this crime," constituted a Brady violation, id. ¶ 13(6).

II.    APPLICABLE LAW

    A.    Legal Standard Governing Review of Habeas Corpus Petitions Brought Pursuant to 28 U.S.C. § 2254

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "'adjudicated on the merits'" even if it fails to mention the federal claim and no relevant federal case law is cited. Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005). Moreover, a state court's "determination of a factual issue" is "presumed to be correct," subject to rebuttal by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The presumption may also "be set

aside if the material facts were not adequately developed at the State court hearing or if the reviewing court finds that the factual determination is not fairly supported by the record." Smith v. Mann, 173 F.3d 73, 76 (2d Cir.), cert. denied, 528 U.S. 884 (1999); accord Durden v. Greene, 492 F. Supp. 2d 414, 420 (S.D.N.Y. 2007).

In Williams v. Taylor, the Supreme Court held that a state court decision is "'contrary to'" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. 362, 405-06 (2000). Williams also held that habeas relief is available under the "'unreasonable application'" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Rather, the state court's application must have been "objectively unreasonable." Id. at 409. As the Supreme Court has noted, without a "categorical" or "clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 746-47 (2008) (internal quotation marks, bracketing, and citations omitted).

In addition, under 28 U.S.C. § 2254(a), federal habeas review is available for a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Errors of state law are not subject to federal habeas review. See,

e.g., Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  To be entitled to habeas relief, a petitioner must demonstrate that the conviction resulted from a state court decision that violated federal law.  See, e.g., id. at 68.

B.    Exhaustion

Before a federal court may consider the merits of a habeas claim, a petitioner is first required to exhaust his available state court remedies.  See 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . .");  accord Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 190-91 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  To exhaust a habeas claim, a petitioner is required to have presented the federal claim to all levels of the state appellate courts.  See, e.g., Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Picard v. Connor, 404 U.S. 270, 275-76 (1971); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991); Daye, 696 F.2d at 191.  In New York, this means the defendant must first appeal his or her conviction to the Appellate Division and then seek a certificate granting leave to appeal from the Court of Appeals.  See, e.g., Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005).  Nonetheless, a court may deny an unexhausted claim pursuant to 28 U.S.C. § 2254(b)(2).

III.   DISCUSSION

A.    Ineffective Assistance of Counsel Based on Untimely Filing of Motion to Dismiss

Rojas claims that he was denied effective assistance of counsel because his lawyer failed to file a timely motion to dismiss on the basis that Rojas had been denied the right to testify

before the grand jury.  Petition ¶ 13(2).  Rojas also raised this issue on appeal.  The Appellate

Division rejected his claim on the merits as follows:

> In the first place, an attorney's failure to secure a defendant's right to testify
> before the grand jury, without more, does not establish ineffective assistance of
> counsel or require reversal (see People v Wiggins, 89 NY2d 872 [1996]).
> Furthermore, in addition to denying the motion as untimely, the court also denied
> it on the merits, and that ruling was correct.  Despite an initial failure to produce
> defendant to testify, the People thereafter provided him with a reasonable
> opportunity to appear before the grand jury, and his ultimate failure to testify
> primarily resulted from his own actions (see e.g. People v Quinones, 280 AD2d
> 559 [2001], appeal withdrawn, 96 NY2d 805 [2001]).  Finally, even if counsel
> made a timely motion, the court granted it, and defendant testified at a new grand
> jury proceeding, there is no indication that his testimony would have affected the
> outcome of the proceedings (see People v Harrison, 304 AD2d 376 [2003], lv
> denied 100 NY2d 621 [2003]).  "All that his appearance before the grand jury
> would do would be to give the prosecutor a preview of the defense" (Jenkins v
> New York State, 2003 WL 21804846, *2, 2003 US Dist LEXIS 13596, *5 [SD
> NY 2003]).

29 A.D.3d at 405-06.

> 1.    Legal Standard Governing Claims of Ineffective Assistance of Counsel

To show ineffective assistance of counsel, a petitioner must satisfy both prongs of the

two-part test articulated in Strickland v. Washington, 466 U.S. 668, 687-96 (1984).  The

Strickland test has been characterized as "rigorous" and "highly demanding."  Pavel v. Hollins,

261 F.3d 210, 216 (2d Cir. 2001) (internal quotation marks and citations omitted); see also Bell

v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (comparing a successful ineffective assistance of

counsel habeas claim to "thread[ing] [a] needle").  To meet the Strickland standards, a petitioner

must show (1) "that counsel's representation fell below an objective standard of reasonableness;"

and (2) "any deficiencies in counsel's performance [were] prejudicial to the defense."

Strickland, 466 U.S. at 688, 692; accord Rompilla v. Beard, 545 U.S. 374, 380, 390 (2005);

Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).  In evaluating the first prong – whether

counsel's performance fell below an objective standard of reasonableness – "judicial scrutiny . . . must be highly deferential," and the petitioner must overcome the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Bell v. Cone, 535 U.S. 685, 698 (2002) (quoting Strickland, 466 U.S. at 689) (internal quotation marks omitted). In order to satisfy the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Lynn v. Bliden, 443 F.3d 238, 247 (2d Cir. 2006).

2.     <u>Application to this Case</u>

It is not necessary to reach the question of whether counsel's conduct fell below an objective standard of reasonableness inasmuch as Rojas has not shown prejudice. Even if Rojas's attorney had filed a timely and successful motion to dismiss, there is no suggestion that there would have been any bar to the People seeking leave to represent the case to a new grand jury. See N.Y.C.P.L. § 210.20(4); see also People v. Morris, 93 N.Y.2d 908, 910 (no limit to the number of times the People may seek leave to submit judicially dismissed charges). Nor, as was noted in a similar circumstance, is there any basis "to find that the outcome [of a new grand jury proceeding] would have been different had petitioner appeared at . . . the grand jury." Fox v. Poole, 2008 WL 1991103, at *8 (E.D.N.Y. May 5, 2008) (rejecting claim of ineffective of assistance of counsel based on counsel's having waived defendant's right to testify before the grand jury). In other words, there is no basis for finding a "reasonable probability" that a second grand jury would have refused to indict Rojas had he testified – particularly given that the

12

evidence against Rojas was sufficient to meet the "beyond a reasonable doubt" standard applicable at trial. Courts considering claims of ineffective assistance of counsel in circumstances relating to the absence of a defendant's testimony before a grand jury have routinely refused to grant habeas relief. See, e.g., Dixon v. McGinnis, 492 F. Supp. 2d 343, 348 (S.D.N.Y. 2007) ("Although Dixon's attorney's failure to submit the N.Y.C.P.L. § 210.20 motion to dismiss the indictment within the five days allotted by N.Y.C.P.L. § 190.50(c) was negligent at best, and can certainly not be considered 'sound trial strategy,' Dixon has failed to demonstrate that the outcome of the proceedings would have been different had the motion been filed on time."); Bingham v. Duncan, 2003 WL 21360084, at *4 (S.D.N.Y. June 12, 2003) ("any defects connected with a grand jury's charging decision are cured by the petit jury's conviction, because the trial conviction establishes not only probable cause to indict, but proof beyond a reasonable doubt"); Santiago Rivera v. McGinnis, 2002 WL 31946709, at *5 (E.D.N.Y. Oct. 21, 2002); Lemons v. Parrott, 2002 WL 850028, at *6 (S.D.N.Y. May 2, 2002); Boyd v. Hawk, 965 F. Supp. 443, 451 (S.D.N.Y. 1997); Kohler v. Kelly, 890 F. Supp. 207, 214 (W.D.N.Y. 1994). Accordingly, Rojas's claim that counsel was ineffective does not warrant habeas relief.

     B.    <u>Inability to Testify Before the Grand Jury</u>

Rojas asserts that his petition should be granted because he was "deprived [of] the right to testify in the Grand Jury." Petition ¶ 13(1). While this claim was not raised in his state court and is thus unexhausted, it may be denied on the merits. See 28 U.S.C. § 2254(b)(2). Because there is no federal constitutional right to a grand jury in a state criminal prosecution, see, e.g., Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir. 1990), "claims of deficiencies in . . . state grand jury proceedings are [not] cognizable in a habeas corpus proceeding," Lopez v. Riley, 865 F.2d

30, 32 (2d Cir. 1989) (citing United States v. Mechanik, 475 U.S. 66 (1986)). Courts thus dismiss habeas claims based on a failure to accord a defendant his state law right to testify before a grand jury. See, e.g., Burwell v. Superintendent of Fishkill Corr. Facility, 2008 WL 2704319, at *8 (S.D.N.Y. July 10, 2008); Dunn v. Sears, 2008 WL 2485431, at *8 (S.D.N.Y. June 18, 2008); Dixon, 492 F. Supp. 2d at 347 n.2; Bulla v. Lempke, 2006 WL 2457945, at *11 (S.D.N.Y. Aug. 25, 2006); Brown v. Connell, 2006 WL 1132053, at * 6 (S.D.N.Y. Aug. 28, 2006); Williams v. Ricks, 2004 WL 1886028, at *6 (S.D.N.Y. Aug. 24, 2004). Therefore, Rojas's claim that he was deprived of the right to testify before the grand jury should be dismissed.

C.    Ineffective Assistance of Counsel on Appeal

Rojas asserts that his appellate counsel was ineffective for not arguing on appeal that the prosecutor failed to inform the grand jury that Gordilas, who testified before the grand jury, was arrested at the scene of the robbery. Petition ¶ 13(5). As the State argues, see Respondent's Memorandum of Law, dated Dec. 2007 (annexed to Pimentel Aff.) ("R. Mem."), at 15, this claim is unexhausted. Nonetheless, we will address it as permitted by 28 U.S.C. § 2254(b)(2).

"[W]hen reviewing decisions by counsel, [courts are] not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every colorable claim' on appeal." Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) (quoting Jones v. Barnes, 463 U.S. 745, 754 (1983)). Thus, "it is not sufficient for the habeas petition to show merely that counsel omitted a nonfrivolous argument." Aparicio, 269 F.3d at 95. There is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689).

It appears that trial counsel argued that the information regarding Gordilas's arrest was exculpatory and thus should have been presented to the grand jurors.  See 440.10 Dec. at 5. Appellate counsel was not ineffective in failing to present this argument on appeal, however, because New York law does not mandate that exculpatory evidence be presented to a grand jury. See, e.g., People v. Mitchell, 82 N.Y.2d 509, 510 (1993); People v. Smith, 289 A.D.2d 1056, 1057 (4th Dep't 2001).  In addition, a defect arising from a failure to present exculpatory evidence to a grand jury is "cured by defendant's use of the alleged exculpatory evidence at trial."  People v. Woods, 288 A.D.2d 905, 906 (4th Dep't 2001).  Accordingly, appellate counsel could properly omit this claim on the ground that it would not have been meritorious on appeal.

D.    Unfair Trial Based on Erroneous Evidentiary Ruling

Rojas claims that he was denied a fair trial because of the officer's testimony that Rojas was "smoking crack."  Petition ¶ 13(3).  Rojas asserts that the court's striking of this testimony was an insufficient remedy.  Id.  Rojas raised this issue on appeal, and the Appellate Division denied his appeal on the merits stating:

> The court properly exercised its discretion in denying defendant's mistrial motion and in instead striking, with curative instructions, police testimony that defendant had said he had been smoking crack (see e.g. People v Wilkins, 16 AD3d 217 [2005], lv denied 5 NY3d 796 [2005]).  After denying the mistrial, the court, at defendant's request, withdrew the curative instruction and reinstated the offending testimony, upon which defendant then cross-examined the officer.  This permitted the People to comment on this evidence on summation in response to defendant's summation arguments (see People v Overlee, 236 AD2d 133 [1997], lv denied 91 NY2d 976 [1998]).

Rojas, 29 A.D.3d at 407.

1.    Legal Standard Governing Claims of Unfair Trial Based on Evidentiary Rulings

15

Because a petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2254(a), "'federal habeas corpus relief does not lie for errors of state law,'" Estelle, 502 U.S. at 67 (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). In general, "[e]rroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.), cert. denied, 464 U.S. 1000 (1983). Rather, such an erroneous ruling rises to a federal constitutional violation "only where petitioner can show the error deprived her of a fundamentally fair trial." Taylor, 708 F.2d at 891 (emphases omitted); accord Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985); Crawford v. Artuz, 165 F. Supp. 2d 627, 635 (S.D.N.Y. 2001). The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Collins, 755 F.2d at 19. In other words, the evidence must have been "'crucial, critical, [and] highly significant.'" Id. (quoting Nettles v. Wainwright, 677 F.2d 410, 415 (5th Cir. 1982)).

### 2.    Application to this Case

The application of the case law on inadmissible evidence arises here in an unusual posture. In this case, the testimony at issue was ultimately allowed into evidence at the defendant's insistence. This admission, however, came about only because the Court refused Rojas's request that the cure for the officer's testimony be a mistrial rather than the limiting instruction that was actually given. Accordingly, we will analyze Rojas's claim based on the

16

notion that the trial court erred in offering only the sanction of striking the evidence, with a

limiting instruction, rather than mistrial.

Viewed in this light, the court's ruling did not violate any federal constitutional principle.

Case law is clear that limiting instructions are sufficient to cure what otherwise amounts to the

erroneous admission of evidence.  See, e.g., Allaway v. McGinnis, 301 F. Supp. 2d 297, 301

(S.D.N.Y. 2004) (limiting instruction negated any argument that admission of evidence was

unfair); Kanani v. Phillips, 2004 WL 2296128, at *19 (S.D.N.Y. Oct. 13, 2004) (limiting

instruction given by the trial court "militate[s] against a finding of constitutional error" resulting

from the allegedly erroneous admission of evidence (citing Peakes v. Spitzer, 2004 WL

1366056, at *18 n.29 (S.D.N.Y. June 16, 2004))); Green v. Herbert, 2002 WL 1587133, at *16

(S.D.N.Y. July 18, 2002) (same (citing Cruz v. Greiner, 1999 WL 1043961, at *31 & n.26

(S.D.N.Y. Nov. 17, 1999))); see also Richardson v. Marsh, 481 U.S. 200, 211 (1987) ("juries are

presumed to follow . . . instructions"); Chalmers v. Mitchell, 73 F.3d 1262, 1267 (2d Cir.) ("We

assume that a jury applies the instructions it is given."), cert. denied, 519 U.S. 834 (1996).

Because there was no federal constitutional error, this claim does not support habeas relief.

    E.    Prosecution's Failure to Turn Over Material Evidence

Rojas asserts that the State violated Brady v. Maryland, 373 U.S. 83 (1963), when it did

not turn over audio recordings and print-outs of the call Ruiz made to the transit command center

and the message the transit command center sent to the police.  Petition ¶ 13(6).

The Appellate Division rejected this claim, stating that the prosecution did not have to

turn over this material because "the People were not in possession of it and the Transit Authority

17

is not a prosecutorial or law enforcement agency, regardless of the extent to which it may

cooperate with the police." Rojas, 29 A.D.3d at 406.

Rojas also raised this claim in his 440.10 motion. The court rejected it stating

[D]efendant has failed to substantiate the essential fact that the prosecution was in possession of the EBCS materials, either by actual physical custody of the materials or constructively through another prosecutorial or law enforcement agency which had custody. Absent that fact, defendant has failed to establish that the prosecution was obligated under the Brady . . . doctrine to obtain, preserve or disclose to the defense the EBCS materials.

* * *

[The] defendant [does not] allege that the prosecution was or should have been aware of the content of the EBCS transmission beyond what Ruiz said she had reported – i.e., that the perpetrator was wearing braces – or that such content may have been exculpatory in nature. Consequently, the People's failure to preserve or disclose the 911 materials was not a violation of their Brady obligations either. See Leka v. Portuondo, 257 F.3d 89, 100 (2nd Cir. 2001) (duty to disclose Brady material attaches "when the prosecutor receives information that he, as an objectively reasonable prosecutor, should recognize as exculpatory or of impeachment value" (citing and quoting Spicer v. Roxbury Correctional Inst., 194 F.3d 547, 558 (4th Cir. 1999]"). [sic]

440.10 Dec. at 8-9.

Under Brady, "the suppression by the prosecution of evidence favorable to an accused

upon request violates due process where the evidence is material either to guilt or to

punishment." 373 U.S. at 87. To establish a Brady violation, a defendant must show three

things: (1) the "evidence at issue must be favorable to the accused, either because it is

exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the

State, either willfully or inadvertently; and [3] prejudice must have ensued." Strickler v. Greene,

527 U.S. 263, 281-82 (1999); accord United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004).

The evidence must also be material to the verdict when "evaluated in the context of the entire

record." United States v. Agurs, 427 U.S. 97, 112 (1976); see also Kyles v. Whitley, 514 U.S.

18

419, 433 (1995) ("[F]avorable evidence is material, and constitutional error results from its

suppression by the government, if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceedings would have been different." (internal

quotation marks and citation omitted)); accord United States v. Avellino, 136 F.3d 249, 256 (2d

Cir. 1998).

Here, the state courts found that the prosecutor did not have actual or constructive

possession of the material in question.  Rojas has not presented "clear and convincing evidence"

to rebut this factual finding as required by 28 U.S.C. § 2254(e)(1).  Because the prosecution did

not have possession of the materials, it did not suppress them, and thus there was no Brady

violation.

F.    Newly Discovered Evidence

Rojas claims the trial court erred in denying his section 440.10 motion on "the grounds

that due diligence was not exercised."  Petition ¶ 13(4).  While the respondent asserts that this

claim is unexhausted, see R. Mem. at 14, it is unnecessary to reach this issue inasmuch as it

would have to be denied on the merits.  See 28 U.S.C. § 2254(b)(2).

In his section 440.10 motion, Rojas sought to vacate his conviction on the ground that the

Six Wire Report constituted "newly discovered evidence."  440.10 Aff. ¶ 7.  As previously

discussed, Rojas obtained this Report in response to a Freedom of Information Law request long

after trial.  The description of the robber in the Report conflicts with Ruiz's testimony as to the

description of the robber she gave to the command center, though it is consistent with

Dominguez's testimony that the robber wore a blue jacket.  In his 440.10 motion, Rojas

concluded that this conflict "proves that Ms. Ruiz the token booth clerk committed perjury, and

was lying when she testified at my trial." Id. ¶ 7.

N.Y. Crim. Proc. L. § 440.10(1)(g), provides in relevant part that a court may vacate a

judgment on the ground that

> [n]ew evidence has been discovered since the entry of a judgment based upon a
> verdict of guilty after a trial, which could not have been produced by the
> defendant at the trial even with due diligence on his part and which is of such
> character as to create a probability that had such evidence been received at the
> trial the verdict would have been more favorable to the defendant; provided that a
> motion based upon such ground must be made with due diligence after the
> discovery of such alleged new evidence . . . .

The trial court denied the application because Rojas failed to establish "that at the time of

trial [he] could not with due diligence on his part have produced the [Six Wire Report]." 440.10

Dec. at 7. The court noted that there was no explanation of why defendant had waited almost

four years to make the request. Id. at 6. In addition, the court noted that it had signed a

subpoena duces tecum for the very records at issue, that there was no evidence that the subpoena

was ever served, and that circumstantial evidence showed that in fact it had never been served.

Id. at 6-8. Rojas seeks review of this decision but does not explain how the decision violates

federal constitutional law. Instead, he merely attacks the court's factual conclusion that he had

not exercised due diligence in seeking to obtain the Six Wire Report. It appears that what Rojas

is really arguing is that because the evidence allegedly shows he is innocent of the charges, his

conviction should be vacated to allow him a new trial.

In Herrera v. Collins, 506 U.S. 390, 400 (1993), however, the Supreme Court held that

"[c]laims of actual innocence based on newly discovered evidence have never been held to state

a ground for federal habeas relief absent an independent constitutional violation occurring in the

underlying state criminal proceedings." Accord Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir.

20

2003); Ortiz v. Barkley, 2008 WL 2266313, at *9 (S.D.N.Y. June 3, 2008) ("actual innocence is

not itself a constitutional claim"); Bravo v. Couture, 2003 WL 22284147, at *4 (E.D.N.Y. Aug.

21, 2003) ("Habeas corpus review does not extend to 'freestanding claims of actual innocence.'"

(quoting Herrera, 506 U.S. at 405)); see also Arce v. Comm'r of Corr. Servs., 2007 WL

2071713, at *4 (E.D.N.Y. July 17, 2007) ("Courts in this Circuit have repeatedly held that claims

of innocence without reliance on constitutional infirmities in the trial do not present a ground for

federal habeas corpus relief."). Thus, courts faced with claims by litigants relying on an

allegedly improper denial of an application pursuant to N.Y. Crim. Proc. L. § 440.10(1)(g) have

rejected  habeas relief on the ground that there is no federal constitutional right at issue. See,

e.g., Kent v. Smith, 2007 WL 2907350, at *16 (N.D.N.Y. Oct. 4, 2007) ("Kent has not explicitly

alleged any independent constitutional error or that his continued incarceration would deprive

him of any specific federal constitutional right.  Instead, Kent insists that the [newly discovered

evidence] prove[s] he is factually innocent. . . .   A petitioner's claim that his conviction is

factually incorrect, or simply that he is actually innocent, does not provide a basis for habeas

relief."); accord Chandler v. Girdich, 2007 WL 1521128, at *4 (W.D.N.Y. Apr. 25, 2007).

     Because this claim does not raise a federal constitutional issue, habeas relief must be

denied.[2]

Conclusion

     Rojas's petition should be denied.

_____

     [2]  To the extent that Rojas's papers assert that his attorney was ineffective for not
obtaining the Six Wire Report during trial, that claim was not presented as an identifiable ground
for relief in his habeas petition and has never been presented to any New York State court.  Thus
we do not consider it here.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Deborah A. Batts, and to the undersigned, at 500 Pearl Street, New York, New York 10007.

Any request for an extension of time to file objections must be directed to Judge Batts. If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: July 25, 2008
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Steven Rojas
04-A-2725
Midstate Correctional Facility C1-10B
P.O. Box 2500
Marcy, NY 13403

Alexis Pimentel
Assistant District Attorney
Bronx County
198 East 161st St.
Bronx, NY 10451

Hon. Deborah A. Batts
United States District Judge

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have ten (10) days from service of this Report and Recommendation to

serve and file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections (and any

responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon.

Deborah A. Batts, and to the undersigned, at 500 Pearl Street, New York, New York 10007.

Any request for an extension of time to file objections must be directed to Judge Batts.  If a party

fails to file timely objections, that party will not be permitted to raise any objections to this

Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: July 25, 2008
      New York, New York

                                         GABRIEL W. GORENSTEIN
                                         United States Magistrate Judge

Copies sent to:

Steven Rojas
04-A-2725
Midstate Correctional Facility C1-10B
P.O. Box 2500
Marcy, NY 13403

Alexis Pimentel
Assistant District Attorney
Bronx County
198 East 161st St.
Bronx, NY 10451

Hon. Deborah A. Batts
United States District Judge